# EXHIBIT A

| | |
|---|---|
| **SUMMONS**<br>*(CITACION JUDICIAL)* | **SUM-100**<br>FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:** ESPN PRODUCTIONS, INC.; a
*(AVISO AL DEMANDADO):* California corp.; MARK GROSS; an
individual; JAMIE REYNOLDS, an individual; and DOES 1
through 50,

**FILED**
Superior Court of California
County of Los Angeles

**FEB 14 2017**

Sherri R. Carter, Executive Officer/Clerk
By _M. Soto_, Deputy
Moses Soto

**YOU ARE BEING SUED BY PLAINTIFF:** DOUG ADLER,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
111 N. Hill Street
Los Angeles, CA 90012
Stanley Mosk Courthouse

CASE NUMBER:
*(Número del Caso):* **BC 650526**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David M. Ring -- #151124                    (310) 209-4100    (310) 208-5052
TAYLOR & RING
1230 Rosecrans Avenue, Suite 360
Manhattan Beach, CA 90266

DATE **FEB 14 2017**  SHERRI R. CARTER  Clerk, by _M. Soto_, M. Soto, Deputy
*(Fecha)*                                *(Secretario)*                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev July 1, 2009]

SUMMONS

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465
Exh. A
Page 10



```
David M. Ring, State Bar No. 151124
TAYLOR & RING
1230 Rosecrans Ave., Suite 360
Manhattan Beach, California 90266
(310) 209-4100

Eric A. Gowey, State Bar No. 174352
GOWEY LAW, APC
100 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
(310) 404-6850

Attorneys for Plaintiff,
DOUG ADLER
```

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

FEB 14 2017

Sherri R. Carter, Executive Officer/Clerk
By: _____, Deputy
Moses Soto

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| DOUG ADLER,<br><br>         Plaintiff,<br><br>-vs.-<br><br>ESPN PRODUCTIONS, INC., a California corp.;<br>MARK GROSS; an individual;<br>JAMIE REYNOLDS, an individual;<br>and DOES 1 through 50,<br><br>         Defendants. | CASE NO. **BC 650526**<br><br>**COMPLAINT FOR:**<br><br>1. **WRONGFUL TERMINATION OF EMPLOYMENT**<br><br>2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>3. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br><br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>5. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

    Plaintiff DOUG ADLER, hereby brings his complaint against the above-named Defendants and alleges as follows:

//

## THE PARTIES

1. Plaintiff DOUG ADLER is a resident of California. ADLER is a tennis commentator who provided play-by-play and expert color analysis for professional tennis television broadcasts, including those on ESPN. For many years Adler has been a broadcaster for the Australian Open, U.S. Open, French Open, and Wimbledon. Adler was hired by ESPN in 2008. He was a broadcaster for the 2017 Australian Open. Adler was wrongfully terminated by ESPN after Adler described Venus Williams as using "guerrilla" tactics, a description that is commonly used in tennis to describe a form of aggressive play. ESPN bowed to pressure from those using social media, including Twitter, who mistakenly believed Adler used the word "gorilla" to describe Venus Williams. ESPN wrongfully terminated Adler and has since caused other employers to shun Adler, causing Adler serious financial and emotional harm.

2. Defendant ESPN PRODUCTIONS, INC., ("ESPN") and DOE 1-20 is a California corporation that has a principal place of business in Los Angeles County, California. ESPN is the leading multinational, multimedia sports entertainment company. Defendant DOES 21-50 are other related entities of ESPN that also engage in the production of sports entertainment programming.

3. Defendant MARK GROSS holds the position of Senior Vice President, Production and Remote Events, for ESPN. He has held that position since 2014. GROSS oversees all event production for ESPN's U.S. television networks.

4. Defendant JAMIE REYNOLDS holds the position of Vice President, Production, for ESPN. REYNOLDS has primary responsibility overseeing ESPN's tennis portfolio, which includes start-to-finish coverage of three of the sport's four Majors -- the Australian Open, Wimbledon, and the U.S. Open.

5. The true names and capacities, whether individual, corporate, associate or otherwise of DOES 1 through 50 are unknown to Plaintiff who therefore sues these defendants under said fictitious names. Plaintiff is informed and believes that each of the defendants named as a Doe defendant is legally responsible in some manner for the events referred to in this Complaint, and is either negligently, willfully, wantonly, recklessly, tortiously, strictly liable, statutorily liable or otherwise, for the injuries and damages described below to this Plaintiff. Plaintiff will in the future seek leave of this court to show the true names and capacities of these Doe defendants when it has been ascertained.

6. Plaintiff is informed and believes, and thereon alleges that each defendant acted in all respects pertinent to this action as the agent of the other defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each defendant are legally attributable to the other defendants.

## PLAINTIFF'S BACKGROUND

7. Plaintiff DOUG ADLER grew up in Los Angeles and was a walk-on, non-scholarship athlete at the University of Southern California (USC) from 1977 to 1981, where he became an All-American tennis player. After leaving USC, he played on the professional tennis tour and was world-ranked in both singles and doubles.

8. After his tennis playing career ended, Plaintiff became a successful businessman, and helped run a highly-successful clothing manufacturing company for many years.

9. After achieving success in business, Plaintiff decided he wanted to do something different in his professional life. Without having any prior broadcasting experience, he decided he wanted to become a sports broadcaster. He was able to gain entry into the incredibly competitive world of tennis broadcasting around 2002. He started out as an on-court announcer at certain professional tennis tournaments and then was hired as a broadcaster, doing both play-by-play and color

commentary. This mid-life entry into the field of sports broadcasting, without any prior experience, was unprecedented.

10. Plaintiff was a natural at broadcasting and was intimately knowledgeable about the game of tennis, such that by 2008 he was working as a tennis commentator for all four of professional tennis' major championships: the Australian Open, French Open, Wimbledon, and the U.S. Open. Plaintiff worked for ESPN since 2008 as a broadcaster for these events and other tennis events that ESPN broadcast.

11. Plaintiff estimates that over the course of his broadcasting career, from 2004 to 2016, he announced approximately 3000 tennis matches. Plaintiff travelled the world to do these matches.

12. Plaintiff is well-respected among his peers. Plaintiff is incredibly knowledgeable about tennis and knows the history of tennis going back to the 1960s when he was a child in L.A. playing junior tennis.

13. Plaintiff closely followed all aspects of tennis from the mid-1970s on, starting when he played in high school and continuing into his careers at USC and on the pro tour. Even as a businessman, Plaintiff closely followed the sport and knew all of its terminology and tactics. That is one reason why he was able to become a successful tennis broadcaster without having any broadcasting experience whatsoever. He knew the game like few others.

14. Plaintiff has few peers when it comes to tennis terminology. As such, to someone like Plaintiff, who has over 40 years of tennis experience, the phrase "guerrilla tennis" is one that has frequently been used to describe a player's aggressive tactics in the sport.

## "GUERRILLA TENNIS"

15. Some of the most famous television advertising campaigns are those by Nike. One of Nike's all-time famous television ads was entitled "Guerrilla Tennis" and became one of the most

talked-about commercials in the 1990s. It featured all-time greats Pete Sampras and Andre Agassi jumping from a taxi in the center of a crowded New York City street, setting up a tennis court in the intersection, and then playing "guerrilla tennis" while crowds gathered around. The two players slammed the ball back and forth at each other in this commercial that is still widely-acclaimed as one of the best ever made. Nike itself entitled the ad "Guerrilla Tennis." Obviously, Plaintiff saw that commercial many times and the phrase became widely used by those who actually understood tennis vernacular and followed the sport closely.

16. Even now, 20 years after the Nike commercial, "guerrilla tennis" is still used among tennis journalists, broadcasters. players, and fans. One of the most respected tennis journalists is Peter Bodo. He is currently the senior editor of Tennis (Tennis.com and *Tennis* magazine), and has written for many sports publications over the years. In 2012, Bodo wrote a profile on female tennis great Agnieszka Radwanska, one of the sport's premier players. Bodo described Radwanska's aggressive style of play as only Bodo could, as follows: "The adjectives that come to mind to describe Radwanska are: Implacable, remote, unflappable, leisurely, languid, measured. She often plays from a low crouch, as if she's dodging real bullets rather than optic yellow ones. It's effective as a discipline that yields consistency, but it's also an apt symbol. ***Hers is a game of the insurgent. It's guerrilla tennis - especially against taller, more powerful, more physical rivals.***" (*Tennis* magazine article entitled "Born This Way" by Pete Bodo, March 31, 2012; emphasis added.)

17. Sports Illustrated highlighted the Bodo article a few days later, in its "Daily Bagel" blog, and used the title "***Agnieszka Radwanska Playing 'Guerrilla Tennis*.**'" (Emphasis added.)

18. In 2013, Bodo wrote about a five-set epic match between Roger Federer and Andy Murray. Bodo's article was on ESPN.com. Bodo wrote, "Against Federer, Murray confirmed that his new, more aggressive game can bear up under world class stress. The 25-year old Scot dictated the

tone and pace of that match. He forced his 31-year old rival, the all-time singles Grand Slam champion, *to fight a bitter guerrilla war."* (Emphasis added.)

19. Many other tennis commentators and writers have used "guerrilla" to describe aggressive tennis players who use a specific tennis strategy of aggressively attacking balls and coming to the net so as to intimidate the opposing player, thus forcing their opponent into making unforced errors. The "guerrilla effect" is just that: a player charges his or her opponent's weakly hit serve or forehand and aggressively hits winning shots back at them. The opponent is soon unnerved, and his or her game falls apart. Thus, "guerrilla tennis."

## PLAINTIFF'S CALL OF THE VENUS WILLIAMS MATCH

20. Plaintiff was hired by ESPN to be an announcer at the 2017 Australian Open. On January 18, 2017, Plaintiff was calling the match between tennis legend Venus Williams and Stefanie Voegele from Switzerland, who was ranked 112 in the world in ladies' singles. Venus, who ultimately reached the finals where she played against her sister, Serena, clobbered Voegele in the January 18 match by a score of 6-3, 6-2. In fact, Venus played some of her best tennis in years during the 2017 Australian Open, and was incredibly aggressive and dominating on her path to the finals. This match against the younger, stronger Voegele was no exception.

21. Voegele was missing first serves, and Venus would then hammer Voegele's weak second serve. Venus was so dominant she would move up into the court to take the serve, thus unnerving Voegele. With Venus dominating 6-3, 1-0, and Voegele serving, Voegele again missed her first serve. Plaintiff then said the following, "She misses her first serve and Venus is all over her. . ." Voegele then missed her second serve. Plaintiff continued his commentary by saying, ". . . and you see Venus move in and put the guerrilla effect on …. charging."

22. This was a perfectly apt tennis term to use in a perfectly apt moment so as to describe Venus' brilliant, aggressive, dominating play that day. It was no different than how the great writer Peter Bodo described Radwanska in his article.

23. Plaintiff lost his job, his broadcast career, and his reputation over this single remark. ESPN took the easy way out and bowed to the Twitter universe of haters and those ignorant of tennis who thought Plaintiff used the word "gorilla" to describe Venus Williams that day.

## ESPN WRONGFULLY TERMINATED ADLER

24. Ben Rothenberg is a tennis writer for the New York Times. In mid-2015, Rothenberg received heavy criticism for an article he wrote about body image issues that female professional tennis players supposedly had. The article focused on Serena Williams. Rothenberg was heavily criticized for the article, and many deemed it to be sexist and racist. Plaintiff is informed and believes that Rothenberg fell out of favor with the Williams' sisters because of the article and desperately wanted to redeem himself and get back in their favor somehow.

25. On January 18, 2017, Rothenberg, who was covering the Australian Open for the New York Times, became aware of Plaintiff's comment and decided to "tweet" about it. Rothenberg used his Twitter feed and linked a comment by one of his followers that had the video clip attached. The follower had tweeted, "She put the Gorilla effect on. Charging." and said "This is not cool." Rothenberg then used his position of power and influence as the Times' tennis writer to retweet that comment along with his own self-serving statement, "This is some appalling stuff. Horrifying that the Williams sisters remain subjected to it still in 2017."

26. Plaintiff is informed and believes that Rothenberg, who had been the subject of criticism for his perceived sexist and racist article about Serena Williams, knew full well that Plaintiff meant

"guerrilla" but instead of clarifying that comment, Rothenberg portrayed Plaintiff as using "gorilla" in an effort to ingratiate himself with the Williams' sisters.

27. Rothenberg's tweet ignited the flames of anger and hatred against Plaintiff. Soon, the Twitter universe was saying that Plaintiff "called Venus a gorilla."

28. The next day, defendant ESPN forced Plaintiff to go on a live broadcast of another match and apologize for what he said. Plaintiff told defendants that there was nothing wrong with using the word "guerrilla" to describe a tennis tactic. ESPN agreed with Plaintiff, told Plaintiff it understood the use of "guerrilla" in that context, but wanted Plaintiff to apologize anyways. Defendants told Plaintiff that he needed to apologize on the air and by doing so it would diffuse the situation and he could then continue with his broadcasting of the tournament. Reluctantly, Plaintiff made an on-air apology and made it clear he never called Venus a "gorilla" but had meant "guerrilla."

29. After making the on-air apology, Plaintiff assumed, based on what he had been told by defendants, that he would continue calling the match and the rest of the tournament. Suddenly, however, Plaintiff was told to leave the broadcast booth as soon as he finished making the apology.

30. Defendants then fired Plaintiff the next day and told him he was done working tennis at ESPN.

31. Defendants ESPN, Gross, and Reynolds knew that Plaintiff used the word "guerrilla," and not "gorilla." Yet they fired him anyway. In fact, ESPN announced the firing of Plaintiff on its website with the headline, "ESPN tennis commentator apologizes for description of Venus Williams' style of play." (January 19, 2017). ESPN admitted in its own news article that, because the two words sound the same, it was "impossible" (in ESPN's view) to say for certain which word Plaintiff spoke.

32. Thus marked the abrupt end of a 15-year broadcasting career. It goes without saying that Plaintiff is anything but a racist. He has never uttered the word "gorilla" to describe any athlete.

8

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Exh. A
Page 18

(Although New York Times writer Rothenberg did just that, writing that Andy Murray was jumping up and down "like a gorilla" after winning a match.) Plaintiff has the greatest respect for all tennis players, and especially the Williams sisters, who grew up on the streets of Los Angeles playing on public courts, just like Plaintiff did when he was young.

33. Plaintiff is now known as "racist," the person who called Venus Williams "a gorilla" and who is now *persona-non-grata* in all professional tennis circles. For something he never said.

## FIRST CAUSE OF ACTION

## WRONGFUL TERMINATION OF EMPLOYMENT

### (Against ALL Defendants)

34. Plaintiff realleges and incorporates herein paragraphs 1 through 33 of this Complaint as though fully set forth.

35. Plaintiff and Defendant ESPN and Does 1-50 entered into an employment relationship in which Plaintiff agreed to announce professional tennis matches and, in return, ESPN promised to compensate Plaintiff for doing so. This employment relationship began in 2008 and continued until January 19, 2017.

36. Defendant ESPN promised, by words and conduct, to discharge Plaintiff only for good cause.

37. Plaintiff performed his job duties in an exemplary manner for ESPN for 10 years, up to and including during the 2017 Australian Open.

38. On January 19, 2017, Defendant ESPN fired Plaintiff from his announcing jobs with ESPN. The termination of Plaintiff's employment was without any good cause, and done without any investigation into the matter. This decision was made by defendants ESPN, GROSS, and REYNOLDS,

and Does 1-50, all in the name of protecting ESPN's "brand" regardless of the devastating effect the perceived discharge for making an allegedly racist remark would have on its long-term broadcaster.

39. As a direct result of ESPN's public announcement that Plaintiff was fired and removed from announcing any more Australian Open matches, ESPN in effect told the public at large that Plaintiff had used the word "gorilla" in describing an African-American tennis player, and as such he would never work for ESPN again.

40. As a direct result of ESPN's wrongful termination of Plaintiff, Plaintiff has been ostracized, defamed, labelled a "racist," and lost other announcing jobs with other employers other than ESPN.

41. As a direct result of ESPN's wrongful termination, Plaintiff has suffered and will continue to suffer serious damages, both economic and non-economic in nature. Plaintiff has lost announcing jobs which translates into lost income. He has lost future opportunities in the sporting and business worlds because no one will ever hire a "racist." He has suffered serious emotional distress and harm, because he has been falsely accused as being the worst thing imaginable, and something he clearly isn't and never has been, all over the use of the word "guerrilla," a word that is commonly used in tennis.

## SECOND CAUSE OF ACTION

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against ALL Defendants)

42. Plaintiff realleges and incorporates herein paragraphs 1 through 33 of this Complaint as though fully set forth.

43. Plaintiff and Defendant ESPN and Does 1-50 entered into an employment relationship in which Plaintiff agreed to announce professional tennis matches and, in return, ESPN promised to compensate Plaintiff for doing so. This employment relationship began in 2008 and continued until January 19, 2017.

44. Plaintiff performed his job duties in an exemplary manner for ESPN for 10 years, up to and including during the 2017 Australian Open.

45. On January 19, 2017, Defendant ESPN wrongfully fired Plaintiff from his announcing jobs with ESPN. The termination of Plaintiff's employment was without any good cause, and done without any investigation into the matter. This decision was made by defendants ESPN, GROSS, and REYNOLDS, all in the name of protecting ESPN's "brand" and "image" regardless of the devastating effect the perceived discharge for making an allegedly racist remark would have on its long-term broadcaster.

46. In fact, ESPN, GROSS, and REYNOLDS and Does 1-50 knew that Plaintiff used the word "guerrilla," and not "gorilla." Yet it fired him anyway. ESPN announced the firing of Plaintiff with a press release and on its website with the headline, "ESPN Tennis Commentator Apologizes For Description of Venus Williams' Style of Play." (January 19, 2017). ESPN admitted in its own news article that, because the two words sound the same, it was "impossible" (in ESPN's view) to say for certain which word Plaintiff spoke. This admission demonstrates that Defendants acted in bad-faith in terminating Plaintiff's employment. ESPN admitted to the public it could not ascertain if Plaintiff said "gorilla." And, prior to the discharge, Plaintiff fully explained to ESPN that he used the word "guerrilla" and explained the context of why that word was appropriate for the situation at hand.

47. As a direct result of ESPN's public announcement that Plaintiff was fired and removed from announcing any more Australian Open matches, ESPN essentially told the public, that at least

from ESPN's point of view, Plaintiff had, in fact, used the word "gorilla" and as such he would never work for ESPN again.

48. Defendants' conduct amounted to a failure to act fairly and in good faith. Defendants shunned their long-time announcer simply to appease a small following of the Twitter universe and to protect its brand and image.

49. As a direct result of ESPN's wrongful termination of Plaintiff, Plaintiff has been ostracized, defamed, labelled a "racist," and lost other announcing jobs with other employers other than ESPN.

50. As a direct result of ESPN's wrongful termination, Plaintiff has suffered and will continue to suffer serious damages, both economic and non-economic in nature. Plaintiff has lost announcing jobs which translates to lost income. He has lost future opportunities in the sporting and business worlds, because no one will ever hire a "racist." He has suffered serious emotional distress and harm, because he has been falsely accused as being the worst thing imaginable, and something he clearly isn't and never has been, all over the use of the word "guerrilla," a word that is commonly used in tennis.

## THIRD CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSEPECTIVE ECONOMIC RELATIONS

### (Against ALL Defendants)

51. Plaintiff realleges and incorporates herein paragraphs 1 through 33 of this Complaint as though fully set forth.

52. Plaintiff had other tennis broadcasting jobs with employers other than ESPN and Does 1-50. Plaintiff had these other jobs for many years, and Plaintiff had no reason to believe these other employers would suddenly stop hiring him as a broadcaster for 2017 and beyond.

53. Defendants ESPN, GROSS, and REYNOLDS and Does 1-50 knew of Plaintiff's relationships with these other entities and employers that hired Plaintiff to broadcast tennis tournaments.

54. After ESPN wrongfully terminated Plaintiff's employment on January 19, 2017, Defendants engaged in conduct that was directly aimed at ensuring Plaintiff did not resume his broadcasting activities with these other entities and employers. Defendants told the other entities that Plaintiff should not be hired for those jobs and that there would be consequences if he was in fact allowed to work those jobs.

55. As a direct result of defendants' misconduct, Plaintiff has lost, and will continue to lose, other broadcasting jobs. All of those jobs were ones that Plaintiff had worked on for years. The only reason Plaintiff has or will lose those jobs is because Defendants told the other entities and employers to not hire Plaintiff.

56. As such, Plaintiff has lost, and will lose, broadcasting jobs that were once his, and were ones he counted on working for many more years.

57. As a direct result of defendants' intentional interference with prospective economic relations, Plaintiff has suffered and will continue to suffer serious damages, both economic and non-economic in nature, including lost wages, lost employment opportunities, and other financial losses.

//

//

//

## FOURTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against ALL Defendants)

58. Plaintiff realleges and incorporates herein paragraphs 1 through 33 of this Complaint as though fully set forth.

59. Defendants ESPN, GROSS, and REYNOLDS' and Does 1-50 misconduct in its treatment of Plaintiff was outrageous.

60. Defendants knew that by terminating Plaintiff during the middle of the Australian Open, after forcing him to apologize on the air, the public at large would simply accept the fact that ESPN fired its announcer for being a racist and calling Venus Williams a "gorilla." ESPN knew this was false, as Plaintiff fully explained the context in which he used the entirely appropriate word "guerrilla." But defendants chose to protect its own brand and image, and instead effectively branded Plaintiff a racist and fired him.

61. As a direct result of ESPN's wrongful termination of Plaintiff, Plaintiff has been ostracized, defamed, labelled a "racist," and lost other announcing jobs with other employers other than ESPN. This has caused Plaintiff serious and severe emotional harm and distress.

62. Defendants intended to cause Plaintiff this emotional harm, or, at a minimum, acted with reckless disregard of the probability that Plaintiff would suffer such emotional distress, knowing that Plaintiff would be labeled a "racist" and never work in tennis again because of the stigma attached to the alleged comment he made, which defendants knew he did not make.

63. As a direct result of defendants' misconduct, Plaintiff has suffered and will continue to suffer serious damages, both economic and non-economic in nature. Plaintiff has lost announcing jobs which translates into lost income. He has lost future opportunities in the sporting and business worlds,

because no one will ever hire a "racist." He has suffered serious emotional distress and harm, because he has been falsely accused as being the worst thing imaginable, and something he clearly isn't and never has been, all over the use of the word "guerrilla," a word that is commonly used in tennis.

## FIFTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against ALL Defendants)

64. Plaintiff realleges and incorporates herein paragraphs 1 through 33 of this Complaint as though fully set forth.

65. Defendants ESPN, GROSS, and REYNOLDS' and Does 1-50 misconduct in its treatment of Plaintiff, if not outrageous, was negligent.

66. Defendants knew or should have known that by terminating Plaintiff during the middle of the Australian Open, after forcing him to apologize on the air, the public at large would simply accept the fact that ESPN fired its announcer for being a racist and calling Venus Williams a "gorilla." ESPN knew this was false, as Plaintiff fully explained the context in which he used the entirely appropriate word "guerrilla." But defendants chose to protect its own brand and image, and instead effectively branded Plaintiff a racist and fired him.

67. As a direct result of ESPN's wrongful termination of Plaintiff, Plaintiff has been ostracized, defamed, labelled a "racist," and lost other announcing jobs with other employers other than ESPN. This has caused Plaintiff serious and severe emotional harm and distress.

68. Defendants knew or should have known that the manner in which it handled this matter would result in serious backlash against Plaintiff because he would be deemed a "racist" who called Venus Williams a "gorilla." Yet, defendants did not investigate, and did not take into account Ben

Rothenberg's role in fueling the belief that Plaintiff said "gorilla" and the ulterior motives that Rothenberg very well may have had in so doing. Defendants lied to Plaintiff when they told him if he apologized on the air, it would make things better and he could then resume his duties. Defendants simply wanted Plaintiff to apologize, knowing they would then fire him moments after he did so.

69. As a direct result of defendants' misconduct, Plaintiff has suffered and will continue to suffer serious damages, both economic and non-economic in nature. Plaintiff has lost announcing jobs which translates to lost income. He has lost future opportunities in the sporting and business worlds, because no one will ever hire a "racist." He has suffered serious emotional distress and harm, because he has been falsely accused as being the worst thing imaginable, and something he clearly isn't and never has been, all over the use of the word "guerrilla," a word that is commonly used in tennis.

### PRAYER FOR RELIEF

As a result of all defendants' intentional and negligent conduct, Plaintiff prays for judgment as follows:

1. For general damages according to proof;
2. For special damages according to proof;
3. For punitive damages against all defendants according to proof, for each claim in this complaint that warrants an award of punitive damages;
4. For attorney fees;
5. For costs of suit;
6. For prejudgment and post-judgment interest according to law; and

//

//

7. For such other and further relief as the court may deem just and proper.

Dated: February 13, 2017

TAYLOR & RING

By: _____
David M. Ring
Attorneys for Plaintiff,
DOUG ADLER

17

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

## DEMAND FOR JURY TRIAL

Plaintiff DOUG ADLER hereby demands a trial by jury.

Dated: February 13, 2017

TAYLOR & RING

By: /s/ David M. Ring
David M. Ring
Attorneys for Plaintiff,
DOUG ADLER